Good luck to you and thank you for visiting. It's always a pleasure. I hope you enjoy your day at the courthouse. Mr. Yannacone, can you see and hear us all right? Yes. Good. We can see and hear you pretty well too. Just stay close to the microphone. Mr. Morris, I can see you. Let me see if I can hear you. Good morning, Judge Sullivan. Perfect. You can see and hear us all right? Yes, I can. Thank you. We have Ms. Leahy here on behalf of Suffolk County. You can hear and see us all right too? Yes. That's good. I think we're going to split this up, I'm told. Mr. Yannacone, you're going to go first for four minutes, then Mr. Morris for five. Mr. Yannacone will then do a minute of rebuttal after we hear from Ms. Leahy. Is that correct? That's correct, Your Honor. All right. So I think we're all squared away. So the floor is yours. You may proceed, Mr. Yannacone. May it please the Court, three errors of established abuse of discretion by the lower court. First, the lower court refused to consider the reply declaration of Attorney Yannacone that substantially modified his original fee request by withdrawing the claims for time spent on FOIL matters and certain manel issues. That reduced the time he claimed by 20%, and it also reduced the fee request by approximately 32%, and yielded a blended hourly rate of only $357.77. However, by ignoring the Yannacone reply, the lower court cut the Yannacone time billings twice for the same erroneous reason. Second, the lower court abused its discretion by ridiculing the use of task-based billing, and gratuitously blaming Attorney Yannacone for implementing a system for time billing that solo practitioners have been encouraged to use in fee-shifting cases since the Supreme Court of the United States established the Logstar method. The legal services provided to Mr. McDevitt from the more than 65 years of experience, Yannacone had as an advocate, litigator, and courtroom trial lawyer. The McDonald case that you cite seems to stand for the opposite proposition for which you cite it. I mean, it's quite frankly skeptical of the blended hourly rate process that you employ here. And that was the point that Judge Brown made, which was that this is not the right way to do it, and I'm not going to do it because the Second Circuit has recognized that this is not the right way to do it. What's your response to that? That isn't appropriate for this case. In this case, the precise time billing system which provided specific times and services and allowed different rates for different services is precisely what the Logstar method has in mind for solo practitioners, and which this court in a number of decisions has pointed out solo practitioners often fail to do. In this case, it was done, and it was done properly, and it was not properly addressed. It was ridiculed. There's nothing ridiculous about using task-based billing. Task-based billing for a solo practitioner is the only way to distinguish among the different kinds of services that a solo practitioner has to perform. You had a third point. What was your third point? Okay. The third point is the abuse of discretion by assigning a $300 hourly billing rate to Attorney Anacone when the defendant's appellees, the Suffolk County and Officer Quineo, stated in their own papers that an hourly rate of $350 was appropriate for it. That's a joint appendix. Look, I hear what you're saying, and, I mean, we could frankly disagree with Judge Brown on the hourly rate he came up with, but that's not the standard. The standard is whether it's an abuse of discretion, and the mere fact that the county thought $350 would be okay and Judge Brown thought $300 is okay is not obvious to me why that's an abuse of discretion. You're saying the district court has to go no lower than what the adversary has said would be appropriate? I don't think the district court in this particular case gave adequate consideration to the services provided, and certainly it didn't even consider the guidelines that were set forth in Rubin v. HSBC, which have been uniformly, I think 79 times as of yesterday, approved within the Eastern District so far. This particular case, Judge Brown abused his discretion by pulling a number out of nowhere after a great deal of abusive and pejorative comment about a matter, a trial, that resulted in a $750,000 verdict that he was very unhappy with. The blended rate situation which plays into that is that when you use test-based billing, it reduces the overall fee dramatically. If you use the same dollar amount, you have to come up with a compromise. Sole practitioners operate at different levels within the same case, and by respecting that and by showing that careful timekeeping is the way to establish a reasonable rate, the court is helped by the process, and the possibility of excess one way or the other is eliminated. That was the whole purpose of time billing and load stock. Okay, so Mr. Yannikone, you've reserved a minute for rebuttal, but I want to get now to Mr. Morris. Mr. Morris, you're going to be focused then on what, the sort of across-the-board reduction? Good morning, Your Honor, and may it please the Court. Yes, among other things, the egregious nature of this denial. There was no offer to resolve this case. We had to try this case. Judge Brown asked the county, and the county refused to accept one dollar to resolve Monell. Well, look, that's all fine, I guess, but the focus typically with respect to the number of hours is some consideration of the success of the claims. So you had to try the case, but you didn't have to bring all of these claims, and Judge Brown's view was that you lost on many of them and got no damages on some of the ones you did win on. There was a remitter there for the damages you got for the principal claim that you won on, and the Monell claim was ultimately vacated. So by that math, it seems like you sort of had a 20 percent sort of victory rate on the claims that you brought federally. Am I wrong about that? Judge, we withdrew a number of claims for judicial economy. I withdrew Monell claims for judicial economy. And, Judge, if we're going to do math, $2,500 was what the offer was. $750,000 was what the verdict was. $233,000 was remittal. So if we're talking about math, a hundred times the best offer we ever got during trial is why I had to try the case. I'm not trying to waste the court's time, but I don't want to send the message that this decision sends to young attorneys. Judge, as you may recall, a number of federal bar association meetings say take civil rights cases. The pro bono panel continues to send out message after message to young attorneys like me when I took this case in my 20s. No, no. I don't think anybody disagrees with any of that. I guess the point is, though, typically we recognize that district judges are there. They're on the ground. They've seen the case. They've seen the lawyers. They've understood the evidence and that it is very difficult for an appellate court on a cold record to get into the weeds, and that's why it's such a deferential standard. Let's not get into the weeds, Judge. Very simply, Judge Brown disregarded the reply. Even Scott Korenbaum asked for more than the $47,000 that the judge award. He'd never read the reply or considered the reply. As Mr. Yanicom points out, he reduced his fees. I had arguments as well, but they weren't considered. It's blatant because of the numbers. The numbers speak for themselves. That is the greatest abuse of discretion because, yes, this appellate court should not review the reply the first time, but the district court judge did not. Like a magician, he wanted the case to disappear. He didn't want it tried. He continued to prosecute essentially a case that we were not allowed to have our evidence. Our client had a day in court. It took over 10 years to get to that day in court. Even as we sit here today, I've had cases that give me a fee award. Mr. Yanicom and I had a 2016 case against Suffolk County. It awarded $500 an hour. An abuse of discretion is to say I'm inexperienced, therefore I'm worth $300 an hour. And then to say Mr. Yanicom is what? I mean 65 years of practice? This man has a record that will speak for volumes in the future. Maybe 100 years combined of service, but yet $300 an hour. It's not just an abuse of discretion. It's egregious. The hostility is noted, not only in the pejorative language, but again, the ridicule of a case that we had to bring. There was no other option. And the degree of success is the greatest measure, as the Supreme Court said, in the city of Riverside versus Rivera, 477 U.S. 561. Forty years ago, it was clear that that was the standard. So this is not just a police misconduct case where certain things were, again, withdrawn, maybe disregarded. But the reply itself, Scott Horenbaum's reply, his hours were not considered, Judge. Well, I mean, we're mixing a couple of things here. But in terms of the rate, I'm talking about the hourly rate right now. I mean, Judge Brown found that $300 would be an appropriate rate. And that, I mean, according to the Eastern District in its 2025 case in Rubin, that's the range for cases of this sort, $300 to $450, right? Judge, I submit to you that these cases don't consider inflation. I consider the inflation. But that's a 25K. I mean, look, every case is different, and I get that. I'm not sure of sort of the time period in which it was all done. But usually you look at the hours at the time of the fee award, that what is the rate now. And it seems to me that $300 is not way outside the range that the Eastern District of New York has recognized as the range for cases or for attorneys doing these types of cases in the Eastern District of New York. Judge, I would submit to you that Judge Block was most appropriate in his decision. And, again, I submit to this Court in the limited time I have that this is the message sent if we are to take civil rights cases. If a man in his 20s is to support a family, nevertheless pay for law school on a $300-an-hour rate, you might as well say don't take the case. If I'm going to have to wait for 10 years, we still haven't been paid. But, Judge, actually the entire panel, please consider I still can't get the misconduct records that underlie an April 2, 2014 civil rights violation that was established by a jury. The jury came back on three Monel findings. Mr. Morris, how long have you been practicing? 2013, I was admitted, Your Honor. Thank you. And how long have you been doing civil rights cases? My entire career and prior to, I worked for the New York Civil Liberties Union, Frederick Burrington's office, the Federal Defenders, and a number of other non-for-profit organizations. Thank you. Mr. Morris, can you point to any place in the district court's decision where you believe the judge made an error on the law? And so I understand that you're not happy with the district court's decision, but can you point to any place where you think that the judge was wrong on the law? As I sit here, I think the judge did not consider the degree of success. That's the greatest error on the law. Aside from the facts, it is a factually heavy record, and I don't envy the position of the appeals courts in looking at these cases. I can imagine this is the least desirable case when an attorney asks for more money. But I ask you to consider it in the volume and context of the civil rights violations plagued by a county whose chief of police, whose district attorney, not only went to jail but were released in the pendency of this action. And again, the degree of success was measured by a jury here. It was also the only quantum we had was $2,500. So in terms of error of law, I think it's a grievous error of law to consider that our elected officials said this was the only measure by which we had to measure success, but not only to allow for civil rights violations to have redress. This is not here to placate attorneys looking for fee awards. This is here so civil rights violations have redress. It's here for the scores of law students and students who hope to be law students who let this court momentarily. It's here for the scores of people who hope that someone will take their cause. Mr. Yannikone has done a million times. I think we get that, Mr. Morris, but I've got to tell you, the students have slipped away. But if we had told them $300 an hour was what was awarded, I think their jaws would have dropped. So I think it's all relative in some sense. I mean, the fact that it's $300 an hour sounds pretty small when you have some lawyers who are getting literally $4,000 an hour in certain kinds of cases. And I definitely understand all that you're saying about the importance of civil rights cases and the importance of lawyers getting paid when they win in those cases. But it is a high standard. That's really the point I'm making. And please allow me to submit this last statement then.  $300 an hour is wonderful unless you're willing to pay it over 10 years. Law students can't afford pizza sometimes because of student loans that are crushing debts. If you allow this type of work to the stand and allow this type of effort and success to be disregarded, you can assuredly not have any law student who actually has the reality of student loans to take such a case. All right. Well, we've reserved a minute of rebuttal for you that Mr. Yannacone will take up. We'll now hear from Ms. Leahy for the count. Thank you. Thank you. Ms. Leahy, just be sure to use those microphones because it matters even more than usual when we have folks appearing by Zoom. I think that's good. Where you are looks good. Okay. Good morning, Your Honors. May it please the Court, my name is Ann Leahy, and I represent the appellee in this appeal of attorneys of the award in a federal civil rights case under 1983. A judge's utilization of neutral judicial discretion is not the same as an exercise of prejudice, notwithstanding the hurt and rankled feelings of disappointed litigants. Some of the language he used was questionable. Would you agree with that? Not particularly judicial. I would agree with that, Your Honor. However, I think the circumstances need to be understood in this case. Judge Brown had a lot of experience with, in particular, Mr. Morris, which he references going back over, I think, four different cases, and he observed him closely during the trial of this matter, and he himself was placed in the position of having to deal with hundreds of pages of what the judge called almost incomprehensible billing entries, which is not what a litigant is supposed to produce. I think those certainly would be fair comments as to the number of hours. I do have some concern about the rates. Mr. Yannacone, $300 an hour for someone who's been practicing for 66 years seems a little low. Yes, Your Honor. However, in this case, Mr. Yannacone didn't present Judge Brown with any clear examples of his billing rates. Plus, as has been previously discussed, he had this billing system, which has been assured completely by the Second Circuit in the McDonald case, where he would, he himself said in his papers to the judge, well, sometimes I bill at $750 as a partner, sometimes at a different rate. And indeed, in one of his submissions, he billed at $416 as a paralegal. So it was the hourly rate that he utilized was an impermissible blended rate consisting of him. Well, but by picking a rate of $300, the Court was, in essence, using a blended rate, although a lower one. In other words, maybe the better way to do this would have been to break down the hours and then assign appropriate rates according to the task. If they are doing work as a paralegal, then those hours get a paralegal rate. If it's work as what a partner would do, then a partner rate, wouldn't that be a better way of doing it? Well, that's, that might be the case, but that's not what the Second Circuit has held must apply to solo practitioners. There's a case out there which says that a solo practitioner who sometimes does what would be junior partner work or associate work can bill at his regular billing rate. So the solo practitioner analysis takes into account the prevailing rate for a social, for a solo practitioner of similar experience, background, and quality. And it already absorbed some of those factors. And I also think that it's inarguable that lawyers can't bill for clerical work. They can only bill for legal work. So the bills that Mr. Yannakonen and Mr. Barr presented were almost indecipherable. They were very, it was very hard to fathom what was going on. The law doesn't require sitting judges to do a library. Just following up on what Judge Shinn said regarding McDonald's, so what is the best, I mean, what is the best way then to account for a solo practitioner doing various types of work that might be work done by a junior associate or a paralegal? What's your position on that? My position is that we have guidance from the courts on this and that it's task-based billing, which is really different than blended billing. Task-based billing doesn't cause an attorney to decide, well, today I'm a partner, today I'm an associate. What it does is it provides a billing system where the attorney can bill for depositions at a certain rate. He can bill for legal papers. He can bill for court appearances. And how does the court consider that? What's the best way the court analyzes and determines the attorney fee then? And is it reducing the number of hours, essentially? I understand your question, Your Honor. And I think that I've thought about it a lot myself. And I think that it's discretionary with a district court judge to work out this conundrum. What's not permissible — So how would task-based billing work? How should it work? The solo practitioner should present to the court billing, which encompasses various tasks undertaken in the litigation. So, for instance — And offer different rates depending on the type of task. Yes, correct. Which is really different than saying here — So Judge Brown didn't say go back and redo this using task-based billing. He essentially used his own blended rate of setting it at $300. And I'm going to argue that that was within his discretion. There was an — I don't see that there's — No, but at the same time, he's criticizing a blended rate. He, in essence, is doing a blended rate. I think the issue — Isn't that right? Isn't that right? Was that a — if I were to agree with that, I guess the next question is, was that abusive discretion? Was that clearly — Well, no, I'm not sure that's — the question is, is that what he effectively did? My understanding was he basically looked to see what is the rate for attorneys doing this kind of work in the Eastern District of New York, and $300 to $450 is sort of a standard rate. Now, it might be lower than what people think it should be, but that's — That is — unlike the records submitted by Mr. Yannikon, which are largely just him saying what he thinks he's worth, that is an actual finding of what is the rate in the Eastern District, right? Correct. And the hourly rate analysis has at least 12 components, which are endorsed by the Second Circuit from the Johnson case in the Fifth Circuit. And those — I won't go into all of them, but the Court obvious — when you go through his decision, you see him looking at various of those components. He looks, for instance, at the hourly billing rate presented by these attorneys. He looks at their — at the complexity of the case. Here, they only succeeded on one limited claim, which was the malicious — really, which it was a malicious prosecution. It was a $700,000 verdict, wasn't it? Yes, except that it was remitted to a much lower verdict. And what's really significant — It was still pretty substantial. It was — and it was significant. And the Court recognized that. But the — Is it true that the county only offered $2,500 in settlement? That was the best you would do? I wasn't the trial attorney. I didn't — I don't know if that's the case or not, Your Honor. But the other part — big piece of this is the success. Even though the attorneys achieved a very substantial jury verdict, they — it was remitted. And they agreed — they stipulated to agree to the lower verdict. And they also stipulated to agree that the Monell claim should be dismissed as a matter of law. The Monell claim was — if you look at the records and even — and the admissions of the attorneys throughout, the Monell claim was a substantial, gigantic focus of their litigation efforts in this case. It's why the case went on for so long. And the judge warned them ahead that he — it was probably not meritorious and that it could really affect their billing rate. The billing rate, the $300 an hour, therefore, just doesn't derive from different billing presentations of the — of the — what the lawyers usually bill for different tasks. That's just one of the parts of it. There are these — all these other components by which the rate is set. And success is — is the most important here. Well, I mean, did you want to talk about the 70 percent across-the-board reduction? Oh, yes, Your Honor. As we've already discussed, a judge is not required to do a line-by-line analysis of the bills. The bills here, over 100 pages — it took the trial and the lawyer in this case 43.25 hours to go through them herself and try to understand them. And even then, she was at a loss to get exactly what was going on. I think the law allows the judge to do a general assessment. We, of course, can't get in his mind. We don't know exactly how many hours he might have put into his analysis or what exactly he did. But his decision, I believe, is really solid, and it upholds various big swaths of billing that were completely inappropriate. And as I mentioned before, the pursuit of the Monell claims, including excessive billing regarding the former police chief and district attorney of Suffolk County, were matters extraneous and irrelevant even to the Monell claim. Then there were many other issues, the FOIL pursuit, for instance, double billing, and so forth, as listed in the decision. All right. Well, we will now hear from Mr. Yannacone for a minute of rebuttal. Thank you, Your Honor. You're on mute. I think you're on mute, Mr. Yannacone. You're on mute, Your Honor. Okay. I'm sorry, Your Honor. Okay. The Rubin decision clearly establishes that in the Eastern District, the billing rate now is no longer $300. $300 is for a low-level associate. I'm a senior partner level. Mr. Morris, because of his success as a trial lawyer, is a senior partner level. $300 is insulting. However, there is a greater problem here. Task-based billing requires billing for tasks. In the fee application and in the timesheets, which apparently the court did not want to spend any time reading, there were summaries at the beginning of each one, and those summaries summarized each task, the number of hours that was assigned to that task, and a estimated billing rate. They were then simply calculated and came up with a blended hourly rate, which in this case is $367.77. However, if the court had read the reply declaration of Attorney Yannacone, he would have seen that the Foyle time was excluded and the Monell time was excluded. And there's nothing in the record that can justify a 70% across-the-board cut in time for a case that took almost 10 years to get to court. And the amount of the verdict, the $750,000 verdict, even though it was remitted to $233,000, is still 100 times more than the $2,500 offer, which was the best the county ever made. In this particular case, the extraordinary success of $750,000 verdict, including $600,000 of punitive damages, clearly indicates this was a meritorious case. Well, I guess I'm confused. I mean, you keep saying what the jury verdict was, but the actual damages are much less, like nearly a third, right? Does that matter? No, that's not actual damages. That was the remitter. Right. And we had to accept the remitter because Mr. McDevitt was 10 years older, and he was suffering a disability at the time he was injured, and his disability has increased. He had to take the money. But the jury came in with $750,000, and that's what really counts. That's the measure of success, and the Supreme Court was unequivocal in saying that success is the primary component. And the Root case clearly establishes the billing rates that should be applied to this case as well as future cases in the Eastern District. And finally, there's no question here that the court abused its discretion by essentially ignoring the reply papers. And the reply papers make up for the inadequacies, if there are any, that were raised by the counties. The county argument is simply that you have to affirm the lower court judge because they have discretion. Of course they have discretion, but the fact that the discretion was abused in this case is becoming more and more obvious. The numbers speak for themselves, and so do the billing rates and the bills. Sure, they're long, they're 100 pages, but they're detailed and they're summarized for the convenience of the court. They don't deserve the kind of language that the court used to just dismiss them. Task-based billing is about tasks, and if the lawyer summarizes the time for each task and assigns a rate to it, the court can change the rate, the court can argue about the rate, the court can argue about the time. But it's there for the doer. All right. Well, thank you. Speaking of time, I think we're over at this point. But we understand the arguments and appreciate the arguments that were made here today. So we will reserve decision.